IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SHOMAS T. WINSTON,

                Plaintiff,

  v.

CHAPLAIN GOFF,

                Defendant.

OPINION and ORDER

23-cv-264-jdp

---

Plaintiff Shomas T. Winston is proceeding on a First Amendment free exercise claim. He alleges that defendant Daniel Goff, then chaplain at Wisconsin Secure Program Facility, intentionally omitted Winston's name from the list of prisoners allowed to attend Jumu'ah service.

After the parties filed cross-motions for summary judgment, Goff moved for sanctions, contending that Winston fabricated three interview/information request forms submitted with Winston's summary judgment materials. I held an evidentiary hearing to determine whether Winston fabricated the requests. For reasons explained in this order, I find that Winston fabricated the requests to attempt to gain a litigation advantage. I will dismiss the case with prejudice as a sanction for Winston's dishonesty. Because this is the second case in this court in which Winston has fabricated request forms for litigation advantage, I will also dismiss all of Winston's other civil rights cases pending in this court and impose a filing bar.

BACKGROUND

In a previous case, I allowed Winston to proceed on an Eighth Amendment excessive force claim against several WSPF correctional staff members. *Winston v. Kolbo*, 23-cv-9-jdp,

Dkt. 8. During discovery, Winston moved for sanctions based on the defendants' failure to preserve video of events that allegedly occurred near his observation cell. Winston said that he had submitted two written information/interview request forms asking that the video be preserved. Defendants said that Winston faked those requests, and they asked me to dismiss the case as a sanction for his dishonesty. After a hearing, I determined that the two requests were fake, and that Winston had created them after the fact to support his discovery motions. *Id.* at 2. I granted the defendants' motion for sanctions and dismissed the case. Dkt. 110 in the '9 case.

In this case, each party moved for summary judgment on the merits. Dkt. 43 and Dkt. 47. Winston attached three information/interview request forms as exhibits 5, 6, and 7 to his brief in support. Dkt. 48-7; Dkt. 48-8; Dkt. 48-9. Winston declared under penalty of perjury that each exhibit is a copy of a request that he wrote to Goff about not being allowed to attend Jumu'ah service, and that he made each copy using carbon paper. Dkt. 48-2 at 2–3. Winston offered exhibits 5, 6, and 7 to support his contention that Goff was aware of the written requests about not being able to attend Jumu'ah service regularly but downplayed those requests in separate oral communications with Winston. *See* Dkt. 14 ¶ 9; Dkt. 48 at 17; Dkt. 51 at 5-6; Dkt. 53 ¶ 9.

HEARING TESTIMONY AND EVIDENCE

Attorneys Alex Thillman and Sarah Huck from the State Department of Justice appeared for Goff. Counsel called Goff and DOC employee Andrea Titlbach, whom Winston cross-examined. Winston gave his own testimony and called prisoner Travis Curtis. All the

2

witnesses, other than Winston himself, appeared by video conference. Thillman and Winston each made argument at the close of testimony.

A. Goff's case

 1. Goff's testimony

Goff gave the following testimony:

Goff is currently the institution complaint examiner at WSPF, but he was the chaplain at that facility when the events at issue occurred. Goff has worked for the Department of Corrections in those and other capacities for 13 years.

Goff described interview/information request forms. The forms are filed on the DOC-643 form, and they are used for prisoners to ask questions or request information or an interview with staff members. The DOC-643 form has two sides. The prisoner must write his request on the top part of the front side and then use the back to specify the person to whom the request is made. The bottom part of the front side is for the staff member to respond and thus is left blank by the prisoner.

Goff described the process by which a prisoner submits a request form. After the prisoner fills out a form, he folds it and drops it in a padlocked mailbox that only staff has access to. Evening staff collects the requests from the mailboxes, sorts them, and delivers them to the mailboxes of the staff members to whom the requests are addressed. The chaplain's office had a mailbox. There was no special procedure for submitting a request to a chaplain.

Goff discussed his standard practice for receiving and responding to request forms. Every morning, Goff would go to his mailbox and collect his mail before going to his office. If Goff didn't have anything pressing, he would "quickly answer" simple requests, returning them to prisoners sometimes the day he received them and typically within five days. But if a request

3

required more information to answer, Goff would tell the prisoner that a response would take a "little longer." Goff made copies of requests only if they were special in some way.

Thillman showed Goff copies of the request forms at issue, which are dated February 3, February 17, and March 3, 2023. Dkt. 76-3; Dkt. 76-4; Dkt. 76-5. The top half of each form's front side is filled out by Winston, and the back side of each form is addressed to Goff. The bottom half of the front side of each form, where Goff testified that he would write the response, is blank.

Goff: (1) was not aware of any of those requests and did not receive them; (2) would have responded to them had he received them; and (3) never intentionally ignored a request form.

2. **Titlbach's testimony**

Titlbach is the finance specialist at WSPF. The basic purpose of Titlbach's testimony was to show that Winston could not have had carbon paper in early 2023, when he allegedly made carbon copies of the forms and submitted them to Goff. Her testimony was supported by Winston's account records and purchases. Whether Winston fabricated the requests does not turn on whether Winston had carbon paper, so I need not summarize Titlbach's testimony in detail. I will assume for efficiency that Winston had carbon paper in that period.

B. **Winston's case**

1. **Curtis's testimony**

Curtis gave the following testimony:

In February 2023, Curtis was employed as a prisoner law clerk on Winston's unit. In February and March 2023, Winston went to the law library on "multiple occasions" and told

4

Curtis that Goff was interfering with his ability to attend religious service. Curtis has also complained to Goff about Curtis's attendance of his own religious service.

Initially, Curtis testified that he had an extra sheet of carbon paper in his folder and let Winston use it, apparently in February 2023. Curtis then clarified that he recalled Winston using carbon paper in the law library to make copies of request forms addressed to Goff on "more than one occasion."

Curtis watched Winston write request forms to Goff "at least more than twice." A couple of times, Curtis exited the law library with Winston and watched Winston drop the request slips addressed to Goff in the prison mailbox. Curtis has brought a federal lawsuit against Goff based on allegations that Goff interfered with his religious practice. (I had granted summary judgment to Goff and another defendant and closed that case the day before the hearing. *Curtis v. Kroening-Skime*, 23-cv-699-jdp, Dkt. 39. That result was not discussed at the hearing.)

### 2. Winston's testimony

Winston gave the following testimony:

Multiple prisoners of different faiths were having problems with Goff in early 2023 because he was interfering with their attendance of religious services. Winston wrote his requests to Goff and put them in the mailbox near the law library, but he never received responses. Winston made carbon copies of those requests because he had previously submitted request forms without receiving a response, and because other prisoners were having issues with Goff. Winston filed an inmate complaint about Goff's alleged interference with his ability to attend religious service, but he didn't specifically mention Goff's failure to respond to his request forms.

5

FINDINGS OF FACT AND ANALYSIS

A district court has the inherent power to sanction a party for abuse of the judicial process. *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018). Dismissal of a case is an appropriate sanction for a party's submission of false documents. *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015); *see also Ayoubi v. Dart*, 640 F. App'x 524, 528–29 (7th Cir. 2016) ("[D]ismissal with prejudice is an appropriate sanction for lying to the court in order to receive a benefit from it, because no one needs to be warned not to lie to the judiciary.").

Based on the testimony and evidence presented at the hearing, and my review of the record, I find that Winston fabricated the three request forms to support statements in his amended complaint and summary judgment materials. I base this finding primarily on six considerations.

First, Goff testified that WSPF had a reliable system for collecting and delivering request forms to him. Unlike interview/information forms routed to the warden, the interview/information forms sent to Goff were not entered into the WSPF correspondence tracking database. Nevertheless, it was Goff's standard practice to respond to and return those requests to prisoners. It's conceivable that a request form could get lost and fail to reach its intended recipient. A single request might easily have been misplaced, but the "chances of [three] requests getting misplaced are remote." *See* Dkt. 110 in the '9 case, at 3.

Second, as I've previously found, "Winston is a highly experienced pro se litigator" who is "not shy about speaking up to prison officials." *Id.* at 4. This experience includes having filed numerous inmate complaints, including at WSPF. Dkt. 76-13. Winston submitted the inmate complaint about Jumu'ah services on March 6, 2023, after his alleged submission of the third request. If Goff had ignored the request forms, it seems most likely that Winston would have

mentioned this conduct in the related inmate complaint, WSPF-2023-3200. Dkt. 76-14. But Winston didn't discuss Goff's failure to respond to his requests in the inmate complaint or the related appeal. *Id.* at 10–11, 13.

Winston argues that he didn't mention Goff's failure to respond to the requests in the inmate complaint because he lacked proof that he submitted the requests. But Winston says that he made carbon copies of the requests, and he now opposes sanctions on the ground that those copies are proof of his submission of the requests to Goff. Winston's explanation for omitting Goff's failure to respond from the inmate complaint is inconsistent with his opposition to sanctions.

Third, Winston did not mention in the second and third request forms at issue that Goff hadn't responded to the previous forms. *See* Dkt. 76-3 at 1; Dkt. 76-4 at 1; Dkt. 76-5 at 1. The closest Winston comes to raising that concern is in the second request, in which he writes that he is "again" writing Goff. *See* Dkt. 76-4 at 1. Again, it seems likely that Winston, a seasoned litigator, would have made a more direct reference to Goff's alleged failure to respond. In the third request, Winston doesn't refer to the previous requests at all. *See* Dkt. 76-5 at 1.

Fourth, I previously sanctioned Winston for fabricating request forms to support a motion. The prior finding of fabrication is relevant because the cases involve the same pattern of fabrication. In both cases, Winston filed request forms that lack any indication that they were received or processed to support motions and other submissions in this court.

Fifth, Winston's testimony and arguments at the hearing were inconsistent with previous submissions in this case. In his complaint in this court, Dkt. 1, Winston did not allege that Goff had ignored or failed to respond to his interview/information requests. On the

7

contrary, Winston alleged that Goff had told Winston that "I always receive request slips from you inquiring about not attending weekly." Dkt. 1 ¶ 12; *see also* Dkt. 14 ¶ 9; Dkt. 48-4 ¶ 7. But at the hearing, Winston suggested during his testimony that Goff didn't respond to the written request forms because Winston orally complained to Goff about not being able to attend religious service, which angered Goff. Winston did not testify at the hearing that Goff had discussed the written requests, as Winston had alleged in his complaint. Winston's hearing testimony is not fully consistent with his statements in his pleadings.

Sixth, Curtis was not a credible witness for three reasons. One, Curtis has his own interest in providing helpful testimony because he: (a) is incarcerated with Winston and has assisted Winston with legal work; and (b) he has a similar lawsuit against Goff. Two, in his declaration, Curtis did not mention the alleged interactions with Winston in the law library in which Curtis watched Winston write requests to Goff, copy them with carbon paper, and mail them. Dkt. 51-6. Curtis did not make these statements until I scheduled the case for a hearing. Three, Curtis gave inconsistent testimony. Curtis initially testified that he had an extra sheet of carbon paper and gave it to Winston so that Winston could make a carbon copy of a request form. Curtis later testified that he recalled Winston using carbon paper (apparently his own) to make copies of the requests more than once.

Winston argued that it is implausible that he would have faked the requests because he's an experienced litigator and knew the consequences of fabrication based on my dismissal of the '9 case. Winston was already an experienced litigator when he faked the requests in the '9 case, so that alone doesn't show that the requests in this case are authentic. Winston is right that he should have been aware of the consequences of further fabrication based on my dismissal of that case. But Winston's pleadings and the hearing evidence show convincingly

8

that he willfully disregarded those risks and again submitted fabricated interview/information request forms to the court. In short, I find that Winston fabricated the three request forms at issue during the course of this litigation to support his summary judgment materials.

SANCTIONS

A prisoner who, like Winston, proceeds without prepaying the filing fee faces few impediments to the filing of a lawsuit, and he can compel the opposing party and the court to expend vast resources based on bare allegations. In exchange for access to the courts, I expect all litigants to be scrupulously honest in their statements to the court. Winston's latest submission of fabricated documents is another grave insult to the integrity of the court and the judicial process. I begin by granting Goff's motion and dismissing this case with prejudice as a sanction for Winston's dishonesty.

More severe sanctions are warranted. In dismissing the '9 case, I warned Winston that "any further act of dishonesty to the court [would] be met with a severe sanction including a filing bar." Dkt. 110 in the '9 case, at 5. I conclude that the only effective sanction now is to fully bar Winston from litigating civil rights lawsuits for a period of time. To that end, I will dismiss Winston's other pending cases in this court: *Winston v. Cirian*, 23-cv-595-jdp and *Winston v. Zoure*, 25-cv-48-jdp. And I will issue a filing bar that does not include an imminent-danger exception for civil suits. *See Lindsey v. Hoem*, 799 F. App'x 410, 413 (7th Cir. 2020) (citing *Support Sys. Int'l, Inc. v. Mack*, 45 F.3d 185, 186 (7th Cir. 1995), as authorizing such a filing bar). Accordingly, the only cases that Winston may file in this court are habeas corpus petitions relating to his criminal convictions. Any civil lawsuit that Winston files will

be docketed and summarily dismissed. After two years, Winston may file a motion asking me to lift or modify this filing bar.

No lesser sanction would be sufficient. A financial sanction would be ineffective because Winston proceeds without prepaying the filing fee. *Rivera v. Drake*, 767 F.3d 685, 687 (7th Cir. 2014). Excluding evidence, imposing a strike under 28 U.S.C. § 1915(g), dismissing only this case, wouldn't deter Winston who appears willing to take the chance to use dishonesty to preserve a fatally flawed suit. There is a heightened need here "not only to reprimand [Winston], but also to deter future parties from trampling upon the integrity of the court." *See Dotson v. Bravo*, 321 F.3d 663, 668 (7th Cir. 2003). The filing bar is necessary "given [Winston's] egregious behavior, his history of litigation misconduct, and the fact that prior sanctions . . . [did] not deterred him from lying." *See Martin v. Redden*, 34 F.4th 564, 569 (7th Cir. 2022).

ORDER

IT IS ORDERED that:

1. Defendant Daniel Goff's motion for sanctions, Dkt. 57, is GRANTED, with the result that plaintiff Shomas T. Winston is sanctioned as explained above.

2. All of plaintiff's cases currently pending in this court, 23-cv-264-jdp, 23-cv-595-jdp and 25-cv-48-jdp are DISMISSED with prejudice, and this order is to be docketed in the '595 and '48 cases.

3. Any pending motions in the above cases are DENIED as moot.

Entered September 3, 2025.

                                                BY THE COURT:

                                                /s/

                                                _____

                                                JAMES D. PETERSON
                                                District Judge